UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 17-CR-6073

DECISION AND ORDER

QUINCEY FRYE,

                Defendant.

## INTRODUCTION

Defendant Quincey Frye is charged in a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] ECF No. 1. By Order dated May 17, 2017, this case was referred to United States Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B).

On December 1, 2017, Defendant moved, *inter alia*, to suppress all tangible evidence seized from 270 Weyl Street in the City of Rochester, New York on March 26, 2016. ECF No. 26 at 4.[2] Judge Payson held a suppression hearing on January 24 and 31, 2018 (ECF Nos. 37, 38) and issued a report and recommendation ("R&R") to which Defendant objected. ECF No. 39. The Government did not respond to Defendant's objections. For the reasons that follow, the Court adopts Judge Payson's R&R and Defendant's motion is DENIED.

---

[1]     The indictment also includes a forfeiture allegation pursuant to 18 U.S.C. §§ 924(d) and 3665, and 28 U.S.C. § 2461(c).

[2]     Each of Defendant's other motions was either decided by Judge Payson or resolved by the parties in open court on December 19, 2017.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3); *see also United States v. Sasiadek*, 1:15–CR–00159 EAW, 2018 WL 1805528, at *3 (W.D.N.Y. Apr. 17, 2018). "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

## FACTUAL BACKGROUND

On January 24 and 31, 2018, Judge Payson conducted an evidentiary hearing on Defendant's suppression motion. ECF Nos. 37, 38.[3] Douglas Rusinko ("Rusinko"), Christopher Mack ("Mack"), and Susan Hrovat ("Hrovat") testified on behalf of the Government. Defendant called no witnesses.

### I. Testimony of Rusinko

In October 2015, the Defendant came under the supervision of Parole Office Rusinko. Tr. 10. Rusinko testified that he was working as a parole officer at the time of the search in question. *Id.* at 7-9. In late-January 2016, Defendant contacted Rusinko and requested to stay at his girlfriend's apartment for the night and possibly through the weekend because the heat at Defendant's apartment was not working properly. *Id.* at 11, 36-37. Rusinko approved Defendant's request. *Id.* at 11. Defendant's girlfriend was Tiffany Granderson and she resided at 270 Weyl Street in the City of Rochester. *Id.* at 35. Granderson was in her early-20's in 2016 and is the mother of at least one of the Defendant's children. Tr. 23. On February 2, 2016, Defendant removed his GPS monitoring bracelet and absconded. *Id*. The bracelet was located in the middle

---

[3] The transcript of the hearing shall be referred to as "Tr.___."

of an intersection in the City of Rochester. *Id*. A warrant authorizing Defendant's arrest was issued that same day. *Id*.

On February 3, 2016, Rusinko went to 270 Weyl Street in search of Defendant. Tr. 44. Rusinko spoke to Granderson and, after receiving her permission, searched the apartment. *Id*. Rusinko did not locate Defendant and Granderson told Rusinko that he wasn't there and that she didn't know why he had cut off his bracelet. Tr. 44-45. Rusinko subsequently searched Granderson's apartment on two more occasions prior to the search in question: on February 13, 2016 and March 4, 2016. *Id*. at 45-46. On each of those occasions, Rusinko obtained Granderson's permission before conducting the search. *Id*. at 46. At each of the February 3, February 13, and March 4 searches, Granderson's mother and a man who was either Granderson's step-father or her mother's boyfriend were present. *Id*. at 17, 46.

On March 26, 2016, Rusinko again returned to Granderson's residence. *Id*. at 15. He did not have any specific information that Defendant was at 270 Weyl Street that day but went there because he was "[p]erforming my job duties, due diligence in enforcing the warrant" and attempting to find the Defendant. Tr. 15. Defendant was accompanied by Senior Parole Officer Mack, and Parole Officers Shearing, Hrovat, Torres, and Demadera. *Id*. The Officers arrived at 270 Weyl Street at approximately 7:15am that morning. *Id*. Rusinko was wearing his badge around his neck but is unsure whether his clothing otherwise identified him as a parole officer. *Id*. at 16. He did not have his firearm drawn as he approached the residence. *Id*. at 17.

Rusinko knocked on Granderson's door and she came to a window that was located between the first and second floor. Tr. 21. Granderson resided in the upstairs apartment and the window was in a common stairwell that joined the upstairs and downstairs apartments. *Id*. at 24. Rusinko recognized Granderson from his prior interactions with her while searching for Defendant

3

at 270 Weyl Street. *Id.* at 23. Rusinko engaged Granderson in conversation while she was at the window, explaining that the Officers were looking for Defendant and asking if they could come inside and look around. *Id.* at 25. In response, Granderson stated that she could not give permission because her parents were not home. *Id.* Rusinko asked if Granderson could get them on the phone. *Id.* Granderson responded that they did not have a phone. Tr. at 26. Rusinko then explained to Granderson that she was an adult and could consent to a search of her residence. *Id.*

Next, Rusinko had someone else take over the conversation with Granderson, who was still at the window, "because she wasn't getting anywhere with me." *Id.* at 28. Rusinko testified that he could not remember which officer took over the conversation but that he did remember the officer's tone was "normal" and conversational. *Id.* at 29, 48. Rusinko also testified that Granderson was yelling and that the conversation lasted about five minutes. *Id.* During the course of the conversation at the window, Rusinkno did not threaten Granderson or force his way into the residence. Tr. 29-30. Nor does he remember any other officers acting in such a manner. *Id.* at 30.

After the conversation at the window, Granderson came downstairs to the exterior door of 270 Weyl Street. *Id.* at 30, 47, 49. She opened the door to the outside where the officers were located. *Id.* at 49. Rusinko testified that, after Granderson opened the door, he asked her a question that "in sum and substance" was "are you allowing us to come in to search for [the Defendant]" but could not "specifically recall the actual question I posed to her." *Id.* at 50. He also testified that Granderson granted them permission to enter, Tr. 30, 49, 51-52, but "[couldn't] recall specifically what she said." *Id.* at 37.

## II. Testimony of Mack

Senior Parole Officer Mack was also present at 270 Weyl Street during the March 26, 2016 search. According to Mack, when the officers arrived at the residence, one of them knocked or rang the doorbell and Granderson came to a window that was located on a landing between the first and second floor. *Id.* at 59, 71. Mack could not recall who was conversing with Granderson initially when she came to the window but testified that at first she "wasn't cooperative" and wasn't granting permission. *Id.* at 60-61, 71-72. Mack testified that at some point Officer Hrovat took over the conversation while Granderson was at the window, and that Officer Rusinko was present. *Id.* at 61, 71. According to Mack, Hrovat was "very calm" while she talked to Granderson at the window and the officers talked to Granderson in a normal tone. Tr. 62-63. Mack testified that the officers did not threaten Granderson. *Id.* at 63.

Mack testified that Granderson eventually came downstairs to the door and that this surprised him because, based on the conversation at the window, he did not think she would come downstairs and open the door. *Id.* at 63, 65-66, 74. Mack was over "back by the corner . . . within about 10 to 15 feet of the door." *Id.* at 65. He immediately went over by the door after it had been opened. *Id.* at 68. Mack testified that he did not hear what Granderson said to "the people right then and there" when she first opened the door and did not overhear the first part of the conversation that took place. Tr. at 74-75. According to Mack, he "asked [Granderson] again if we could go in to search" while they were going up the stairs to the upstairs apartment or on the landing. *Id.* at 66-67, 76. Mack testified that "she said yes" in response. *Id.* at 67, 77, 80-81. Granderson never requested that the officers leave the residence once they were inside. *Id.* at 68.

### III. Testimony of Hrovat

Officer Hrovat testified that she was also at 270 Weyl Street during the search in question on March 26, 2016. *Id.* at 85-86. According to Hrovat, a young woman came to a window at 270 Weyl Street in response to officers knocking. Tr. at 87. Initially, another officer was talking to the woman but Hrovat took over the conversation. *Id.* at 88, 96. Without granting permission to enter, the woman left the window. *Id.* at 98. Hrovat testified that the woman eventually came down to the exterior door to the residence. *Id.* at 98.

According to Hrovat, after a conversation at the door, the woman gave the officers permission to enter the exterior door of the residence. *Id.* at 99-100, 103. Hrovat went on to testify that she "[doesn't] recall exactly what [Granderson] said" when granting that permission. Tr. at 101-02. However, Hrovat also testified that although she "can't recall exactly what [Granderson] said . . . [she] was there when the conversation went on" and that Granderson articulated verbal permission. *Id.* at 103-05.

## DISCUSSION

### I. Objections

Defendant's objections to Judge Payson's R&R states that "[t]he simple question for this Court's consideration is whether the government presented sufficient evidence to satisfy its burden of demonstrating free and voluntary consent to the search." ECF No. 40 at 1. Defendant asserts that the Government has not met this burden and "objects to the R&R because the government failed to offer sufficient evidence that Ms. Granderson freely and voluntarily consented to the search." *Id.* at 2.

In her R&R, Judge Payson concluded that Granderson's consent was voluntary and recommended that this Court deny Defendant's suppression motion based principally on three

findings: (1) Granderson, as an adult who rented the apartment, "had authority to consent to the officers' entry into and search of the apartment; (2) "nothing in the record suggests that the officers' conduct intimidated or coerced Granderson into providing consent"; and (3) "the credible testimony of Rusinko, Mack and Hrovat establishes that Granderson voluntarily consented to their entry." ECF No. 39 at 10-11. In reaching her conclusion, Judge Payson "credit[ed] Hrovat's testimony that the officers did not cross the threshold of the exterior door until they had obtained verbal consent from Granderson." ECF No. 39 at 11 n. 6 (citing Tr. 102-03). Judge Payson also noted that "even if Hrovat's testimony were not credited, the credible testimony of Rusinko and Mack, Tr. 49-52, 66-67, establishes that Granderson opened the exterior door, stood aside to permit the officers' entry, and verbally assented to the search before the officers crossed the threshold into her apartment at the top of the stairs." *Id*.

Defendant objects to Judge Payson's conclusion that Granderson provided voluntary consent for a search of the apartment, arguing that "the R&R skips over a necessary and critical step in the analysis" in that before considering whether Granderson's consent was voluntary, "it must first be found that she consented at all." ECF No. 40 at 13. In support of this argument, Defendant asserts that Judge Payson's crediting of Hrovat's testimony "ignores that only a few sentences earlier and a few sentences later, Hrovat twice admitted that she could not recall any of the statements by Granderson which allegedly conferred consent." ECF No. 40 at 13. Additionally, Defendant asserts that Judge Payson's crediting of Rusinko's and Mack's testimony "is faulty on two grounds": (1) "the finding . . . failed to account for the fact that both witnesses also said that they were not the person talking to Granderson at the time she consented . . . and neither could recall specific details of the conversation leading up to, or at the moment in which Granderson allegedly consented"; and (2) despite the R&R's characterization that Granderson "stood aside to

7

permit the officers' entry," Mack's testimony in fact establishes that Granderson was the first to walk up the stairs, which "could just as easily be interpreted as a non-verbal refusal to consent." *Id*. at 14.

**II.     Analysis**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Under the Fourth and Fourteenth Amendments, it is well settled that "a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal quotation marks and alterations omitted). "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id*. "Consent can be found from an individual's words, acts or conduct." *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir. 1988) (citations omitted). "Thus a search may be lawful even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.'" *United States v. Grant*, 375 Fed. Appx. 79, 80 (2d Cir. 2010).

**A. Granderson Gave Consent**

"[T]he Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for a police officer to believe that an individual's consent permitted the officer to conduct the search." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) (citing *United States v. Garcia*, 56 F.3d 418 (2d Cir.1995)). "Whether an officer had a reasonable basis to believe that an individual consented to a search is an objective test that does not preclude an

assessment of the particularities of the situation that is presented in any given case." *Id*. (internal quotation marks omitted).

In the R&R, Judge Payson "credit[ed] Hrovat's testimony that the officers did not cross the threshold of the exterior door until they had obtained verbal consent from Granderson." ECF No. 39 at 11 n. 6. "The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *Lawson*, 961 F. Supp. 2d at 499; *see also Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir.2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge.").

At the suppression hearing, Judge Payson listened to Hrovat's live testimony and, based on that testimony, concluded that the officers had verbal consent before crossing the threshold of the exterior door. Judge Payson observed Officer Hrovat's demeanor at the hearing firsthand and assessed her credibility. The Court "will not second-guess" Judge Payson regarding Hrovat's credibility. *See Lawson*, 961 F. Supp. at 501 ("The Magistrate Judge had the opportunity to view defendant's appearance and demeanor over the course of the hearing, and . . . [t]he Court will not second-guess the Magistrate Judge in this regard").

Though Hrovat could not recall the exact words Granderson stated or to which officer they were specifically directed, her unequivocal response to Judge Payson's questioning at the suppression hearing was that Granderson granted the officers verbal permission to enter the residence and that she heard it.

> MAGISTRATE JUDGE PAYSON: Okay, the conversation you're talking about was a conversation that occurred when she opened the door?
>
> THE WITNESS: Yes.

9

> MAGISTRATE JUDGE PAYSON: And you're saying you were present for it?
>
> THE WITNESS: Yes.
>
> MAGISTRATE JUDGE PAYSON: You heard it?
>
> THE WITNESS: Yes.
>
> MAGISTRATE JUDGE PAYSON: But you just don't remember what the words were that were used?
>
> THE WITNESS: Exactly.
>
> MAGISTRATE JUDGE PAYSON: And you're testifying that it was verbal permission?
>
> THE WITNESS: Yes.

Tr. 104-105.

Rusinko's testimony that Granderson granted them permission to enter, Tr. 30, 49, 51-52, but that he "[couldn't] recall specifically what [Granderson] said" is consistent with Hrovat's testimony. *Id*. at 37. Furthermore, Mack's testimony that he was not near the exterior door at the time verbal permission was given, and thus did not hear what was said, does not conflict with the testimony of either Hrovat or Rusinko. *See id*. at 65, 68, 74-75.

Based on the officers' testimony at the suppression hearing, the Court finds that the Government has proven by a preponderance of the evidence that the officers obtained verbal consent before entering the exterior door of 270 Weyl Street on March 26, 2016.[4]

**B. Granderson's Consent was Voluntarily Given**

"To ascertain whether consent is valid, courts examine the totality of all the circumstances to determine whether the consent was a product of that individual's free and unconstrained choice,

---

[4] Because the Court finds that Granderson gave verbal consent to the officers, it need not consider whether Granderson's actions in the doorway constituted non-verbal consent.

rather than a mere acquiescence in a show of authority." *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995). "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." *Id*. at 422–23. It is the government's burden to prove by a preponderance of the evidence that the consent was voluntary. *United States v. Guzman*, 724 F.Supp.2d 434, 441 (S.D.N.Y. 2010).

Here, the transcript of the suppression hearing is devoid of any specter of coercion, threat, or force. The officers testified that they spoke in normal, conversational tones, Tr. 29, 31, 63-64, 67-68, 89, did not threaten or coerce Granderson in order to obtain entry into the residence, *id*. at 29, 30, 63-64, and they did not force their way into the exterior door of the residence. *Id*. at 30. The testimony of the officers proves, by a preponderance of the evidence, that Granderson's verbal consent given at the exterior door of 270 Weyl Street was voluntary.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Payson's R&R, ECF No. 39, and Defendant's motion to suppress, ECF No. 26, is DENIED.

IT IS SO ORDERED.

DATED: May 4, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge United States District Court